IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

COOKE & MOSES, LLC,
ROY COOKE AND JEFFREY MOSES

    Plaintiffs,

                                        CIVIL ACTION NO. 1:06-CV-147
v.                                          (Judge Keeley)

QSS-ENGINEERED SYSTEMS GROUP, LLC,
d/b/a Deligo Technologies, a Michigan
Limited Liability Company,
QUALITY SOFTWARE SOLUTIONS, INC.,
a Michigan Corporation, d/b/a
QSSOLUTIONS, INC., THOMAS KELLY,
DAVID H. MARSH, ARTHUR C. CARLUCCI,
DENNIS MOORE, DEMO A. STAVROS,
ROBERT WIDMAN, ROBERT ZEINSTRA,
and JOHN DOES 1-10

    Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Before the Court are a motion to dismiss filed by the defendants (doc. no. 12) and a motion for leave to amend filed by the plaintiffs (doc. no. 18). The motion for leave to amend is fully briefed and ripe for review, and for the reasons that follow, the Court **GRANTS** the plaintiffs' motion to amend.

### I. Facts and Procedural History

The plaintiffs are a West Virginia-based LLC ("CCM") and its two founding members who are residents and citizens of South

**COOKE & MOSES, LLC, ET. AL. V. QSS, ET. AL.**          **1:06CV147**

**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

Carolina. The defendants are a Michigan-based corporation ("QSS"), a Michigan-based LLC ("QSS-ESG"), and their members, officers and directors. In 2003, QSS-ESG sought additional funding to further develop and market the intellectual property at issue ("Iced*CAD"). QSS-ESG's advertising consultant approached the plaintiffs to discuss a potential investment opportunity. The plaintiffs ultimately agreed to provide funding to QSS-ESG through a line of credit, and on July 13, 2004, the parties executed a Note for $750,000.

On September 29, 2006, the plaintiffs filed a complaint seeking judgment in the form of specific and general relief, treble damages and punitive damages against Defendants QSS and QSS-ESG and their individual officers and agents. In their complaint, the plaintiffs argue that the defendants made a series of material misrepresentations concerning the parties' executed Note, the ownership and transferability of Iced*CAD and its stage of development. The plaintiffs allege that the defendants engaged in a scheme to defraud that violated the Racketeer Influenced and Corrupt Organizations ("RICO") statute. The plaintiffs also allege claims for civil conspiracy, fraud, breach of contract, negligent misrepresentation, and several claims in the alternative.

2

**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

On November 28, 2006, the plaintiffs amended their complaint to add additional factual allegations pursuant to Fed. R. Civ. P 15(a), following which, on December 15, 2006, the defendants moved to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(1) and (6). In their motion, the defendants argue that the amended complaint contains an incorrect factual allegation upon which each count against them is contingent. They claim that the plaintiffs falsely and knowingly alleged that the defendants withheld information about their business relationship with Purma Global Infotech, Ltd. ("PGI") and PGI's joint ownership of Iced*CAD. The defendants reference a series of e-mails between them and the plaintiffs on March 23, 2004, in which the parties communicated about PGI and the joint ownership agreement.

On January 9, 2007, the plaintiffs filed a response to the defendants' motion to dismiss and moved to amend their previously amended complaint. This second motion to amend seeks to correct mistakes in the pleadings that became apparent to the plaintiffs during proceedings in this case.

## II. Motion to Amend

In their response to the defendants' motion to dismiss, the plaintiffs concede that, prior to the filing of their complaint,

the defendants had informed them via e-mail about the existence of PGI and its joint ownership of Iced*CAD.  The plaintiffs assert, however, that they had not previously recollected the e-mail communication.  Moreover, they contend that the e-mail contained only "one fact related to one of the fraud claims," and that "it does not address the other distinct fraud claims, nor does it impact the civil conspiracy, negligent misrepresentation, breach of contract, guaranty, or RICO claims."  In their motion to amend the amended complaint, the plaintiffs state that they "do not seek to add additional theories of liability to the Amended Complaint, but rather . . . [seek] to correct a mistake that has become apparent in the course of the proceedings."  They assert that the proposed amendment will not prejudice the defendants and will simply clarify the issues in dispute.

In the proposed amendment, the plaintiffs have changed the language in paragraphs 32, 55 and 62.  The first paragraph adds language in which the plaintiffs admit that Defendant Kelly "communicated with Plaintiffs regarding the Joint Management Agreement . . . ." (Pls.' Motion to Amend Am. Compl., p.3).  The language also inserts the factual allegation that Defendant Marsh "later affirmed, repeatedly," that the defendants could transfer and pledge the software as collateral. (Id.).  The second paragraph

provides additional language in which the plaintiffs allege that they did not know the nature of the defendant's obligations to PGI <u>at the close of the deal</u>. This language alters the original allegation, in which the plaintiffs claimed that they did not know about defendants' obligations to PGI <u>at any time</u>. Finally, the third paragraph is essentially a reiteration of the second.

On January 23, 2007, the defendants filed a response in opposition to the plaintiffs' motion to amend in which they argue that the proposed amendment "should be denied as futile and made in bad faith." They claim that the "proposed amendments neither change the causes of action alleged . . . nor add anything of value . . .," and that they only serve to make litigation more costly. Moreover, the defendants assert that the proposed amendment is "futile" because it fails to state a legally sufficient claim for fraud under Fed. R. Civ. P. 9(b) and West Virginia law. Further, they allege that the plaintiffs filed the motion in bad faith because the proposed amendment would change the factual allegation that is the "cornerstone" of the complaint.

On January 31, 2007, the plaintiffs filed their reply asserting that, because the facts contained in the e-mail have "little impact" on the "overall complexion of the case," the proposed amendment will not prejudice the defendants and should be

5

permitted. They further contend that the defendants' futility argument is without merit and is essentially a recitation of their arguments in support of the pending motion to dismiss. Finally, plaintiffs also claim that the proposed amendment "reflects a good faith effort to bring the Court only to those issues actually in dispute between the parties."

### III. Standard of Review

Under Fed. R. Civ. P. 15(a), "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Nevertheless, a district court may deny a motion to amend if the amendment would be futile, was made in bad faith or with a dilatory motive, or if it would unduly prejudice the opposing party. Foman v. Davis, 371 U.S. 178, 182 (1962). See also Sandcrest Outpatient Services, P.A. v. Cumberland County Hosp. Sys., Inc., 853 F.2d 1139, 1148 (4th Cir. 1988). It is squarely within the Court's discretion to either grant or deny the motion to amend. Foman, 371 U.S. at 182.

## IV. Discussion

**a. Futility**

The defendants contend that the plaintiffs' proposed amendment is futile because, like the previous complaint and amended complaint, it fails to state a legally sufficient claim for fraud under Fed. R. Civ. P. 9(b) and West Virginia law.  In support, the defendants cite New Beckley Min. Corp. v. Int'l Union Mine Workers of America, 8 F.3d 1161, 1164 (4th Cir. 1994), in which the Fourth Circuit found that, because "[t]he proposed amendment would not have corrected the fundamental defect in the complaint," the proposed changes were futile.  Similarly, in Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986), the Fourth Circuit held that, "[l]eave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face."  Further, a claim is "frivolous" only if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Pursuant to Fed. R. Civ. P. 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  The Fourth Circuit has further articulated that "the 'circumstances'

7

required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999) (citing 5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>: Civil § 1297, at 590 (2d ed. 1990)).

West Virginia law requires a showing of the following three elements in a fraud action: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; (3) that he was damaged because he relied upon it." <u>Lengyel v. Lint</u>, 280 S.E.2d 66, 69 (W.Va. 1981).

The West Virginia Supreme Court of Appeals has consistently held that a fraud claim "must <u>ordinarily</u> be predicated on an intentional misrepresentation of a past event," and not on a misrepresentation as to future events or on promissory statements. <u>Croston v. Emax Oil Co.</u>, 464 S.E.2d 728, 732 (W.Va. 1995) (emphasis added); <u>see</u> <u>also</u> <u>Janssen v. Carolina Lumber Co.</u>, 73 S.E.2d 12, 17 (W.Va. 1952). The law, however, does not preclude fraud claims based on future or promissory "expressions of intention" if the

plaintiff can show that the defendant did not intend to fulfill the promise at the time it was made. <u>Croston</u>, 464 S.E.2d at 728.

Here, the defendants argue that the plaintiffs' proposed amendment fails to state a legally sufficient claim for fraud because it merely "seems to imply" that a fraudulent allegation was made with regard to the defendants' ownership and ability to transfer the Iced*CAD software. (Defs.' Opp'n to Pls.' Motion to Amend, p. 7) (hereinafter "Defs.' Opp'n"). The plaintiffs' proposed amendment, in pertinent part, reads:

> During some exchanges, Defendant Kelly communicated with Plaintiffs regarding the Joint Management Agreement, but he later affirmed, repeatedly, that QSS <u>could</u> transfer its rights to the software to QSS-ESG and that QSS-ESG <u>could</u> pledge them as collateral against the deal.

(<u>Id.</u> at 6) (emphasis added).

The defendants argue that, at most, the proposed amendment constitutes a "promise to secure PGI's ownership interest . . . ." (<u>Id.</u> at 7). Alternatively, they argue that this allegation even fails to identify a fraudulent promise to take future action. The defendants focus on the word "could" in the proposed amendment, arguing that the allegation is only a "prediction" and "speculation" about what would happen in the future. (<u>Id.</u> at 8).

9

**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

The Fourth Circuit has clearly stated that plaintiffs need only plead the time, place, identity of the person making the allegedly false misrepresentation and its contents. <u>Harrison</u>, 176 F.3d at 784. On the face of the plaintiffs' proposed second amended complaint, they do just that, discussing at length when the alleged misrepresentations occurred, where the meetings, phone conversations and e-mail correspondents took place, which defendants made what alleged misrepresentations and the subject matter of the misrepresentations.

Even assuming that the defendants are correct in asserting that the proposed amendment merely implies that "there was a promise made," the plaintiffs still have stated a claim that has an arguable basis in law and fact. Pursuant to West Virginia law, a valid claim for fraud can be mounted if plaintiffs can show that the defendants never <u>intended</u> to fulfil the alleged promise. Because the pleading requirements of Fed. R. Civ. P. 9(b) permit the plaintiffs to aver "intent" generally, the plaintiffs have sufficiently stated a fraud claim that, at the very least, is arguably based in both law and fact. The Court therefore finds

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND

that the plaintiffs' proposed amendment is not legally insufficient or frivolous on its face, and thus is not futile.[1]

**b. Bad Faith**

In Forman v. Davis, 71 U.S. 178, 182 (1962), the Supreme Court stated that a court has discretion to deny a motion to amend if there has been "bad faith or dilatory motive on the part of the movant . . . ." In exercising that discretion, the United States District Court for the Southern District of West Virginia has found that a plaintiff's cognizance of the facts underlying the proposed amendment, "such that he could have included them or sought an amendment earlier than he did," supports a finding of bad faith. Gum v. General Elec. Co., 5 F.Supp.2d 412, 415 (S.D.W.Va. 1998). See also Gladhill v. General Motors Corp., 743 F.2d 1049, 1052 (4th Cir. 1984) (finding that "[t]he timeliness of a plaintiff's motion to amend is a critical factor in assessing dilatory motive, undue delay, bad faith, and prejudice").

The defendants argue that the plaintiffs seek to amend the very factual allegation which permeates their entire complaint,

---

[1] The defendants have also asserted that the plaintiffs' proposed amendment fails even to allege that the defendants' have identified a "fraudulent promise." The Court need not address this argument here. The Court will fully analyze this issue in its forthcoming order addressing the defendants' pending motion to dismiss.

11

without explaining why they failed to include "the new theory" in the first two versions. (Defs.' Opp'n, p. 9). In the previously amended complaint, the provision at issue states: "It was at this time that Plaintiffs <u>first</u> became aware of the relationship of PGI to the Iced*CAD software." (Pls.' Motion to Amend, p. 3) (emphasis added). The same provision in the proposed amendment states: "It was at this time that Plaintiffs became aware of the <u>continuing ownership</u> relationship of PGI to the Iced*CAD software." (<u>Id.</u>) (emphasis added).

The defendants argue that the proposed amendment fails to cure the plaintiffs' legal and factual defects in their underlying fraud claims, and that the only explanation for the plaintiffs' actions is bad faith and dilatory motive. The plaintiffs, by contrast, claim that they did not recall the relevant e-mail communication containing the material fact at issue when they filed their initial and amended complaints. Moreover, they assert that they neglected to conduct an electronic search prior to filing their complaint due to concerns about potential spoilation of evidence.

The factual underpinnings of this case lend support to the plaintiffs' explanation. The events leading up to this litigation span three years, during which time the parties communicated extensively in person, over the telephone and through e-mail.

Given the volume of communications and the lengthy time period over which they occurred, the Court finds it reasonable that the plaintiffs could have overlooked a single e-mail communication when they prepared their complaint. The Court finds no evidence of bad faith in its omission. It also finds that the plaintiffs' concerns over spoilation are reasonable given the often contentious nature of litigation. Moreover, the plaintiffs filed their motion to amend in a timely manner after learning from the defendants about the existence of the e-mail. Ultimately, given the liberal standard of Fed. R. Civ. P. 15(a), the defendants' arguments are insufficient to defeat an amendment at this early stage of the litigation.

**c. Prejudice**

As the plaintiffs note, the defendants do not argue that the plaintiffs' proposed amendment will result in prejudice. Nevertheless, they assert that the proposed amendment is not prejudicial for the following reasons: (1) The request to amend was made at the outset of litigation; (2) No discovery has occurred and the deadline for initial discovery has not been set; and (3) The plaintiffs have not included a new theory of liability. The Court agrees that the request is timely, puts forth no new legal theories and will not prejudice the defendants.

### V. Conclusion

For the preceding reasons, the Court **GRANTS** the plaintiffs' motion for leave to amend their complaint. Further, pursuant to this Court's Order issued on January 22, 2007, the defendants **SHALL** file their reply to plaintiffs' response to the motion to dismiss, if at all, within seven business days.

It is **SO ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: July 12, 2007

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE